**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

David T. Ligocki

   v.                                    Case No. 18-cv-1112-SM

Kim Lacasse, John E. Perkins,
J. Masse, NH State Prison,
NH Department of Corrections Commissioner
William Wrenn, Chris Kench,
NH State Prison Warden Michael
Zenk, and FNU Marchant

**REPORT AND RECOMMENDATION**

Before the court is pro se plaintiff David T. Ligocki's complaint (Doc. Nos. 1, 1-1) filed pursuant to 42 U.S.C. § 1983. The complaint is before this magistrate judge for preliminary review  See 28 U.S.C. §§ 1915(e)(2), 1915A; LR 4.3(d)(1).

**Preliminary Review Standard**

The court may dismiss claims asserted in an inmate's complaint, if the court lacks subject matter jurisdiction, a defendant is immune from the relief sought, the complaint fails to state a claim, or the action is frivolous or malicious. See 28 U.S.C. § 1915A(b).  In determining whether a pro se complaint states a claim, the court must construe the complaint liberally. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam).  To survive preliminary review, the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief.'"  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)

1

(citation omitted).  The court treats as true all well-pleaded factual allegations, and construes reasonable inferences in plaintiff's favor.  See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011).

## Background

Mr. Ligocki is a prisoner of the State of New Hampshire. On an unspecified date, he was transferred from the New Hampshire State Prison ("NHSP") in Concord, New Hampshire, to the Northern New Hampshire Correctional Facility ("NCF") in Berlin, New Hampshire.[1]  He was transferred back to the NHSP three days later.  Upon his return, the NHSP Administrator of Classifications, Kim Lacasse, refused to assign Ligocki to his previous housing unit, Medium Custody North ("MCN"), and assigned him instead to H-Building, which, he asserts, has a reputation as a place where inmates are assaulted.

Ligocki refused to comply with the order to move to H-Building and was placed on suicide watch in the NHSP infirmary's isolation tank.[2]  The next day, he was evaluated by mental health

---

[1] It appears from various allegations in the complaint that Ligocki's move to and from NCF occurred in February or March 2016.  See Compl. (Doc. No. 1, at 5, 10); see also Mar. 15, 2016 Inmate Request Slip (Doc. No. 1-1, at 1).

[2] Ligocki does not state why he was placed on suicide watch, so the court is left to infer that it was because he refused to comply with order to be housed in H-Building.

2

staff who, on his behalf, attempted to have him reassigned to MCN.  Although the mental health staff was unsuccessful in having Ligocki reassigned to MCN, they cleared him from suicide watch.  The mental health and medical staff briefed H-Building staff, who asked Ligocki some questions and then assigned him to cell #4 in D-Pod, which housed seven other inmates.[3]

When Ligocki entered the cell, another inmate warned him that Chanel Cote, an inmate Ligocki had conflict with a year prior, was also assigned to that cell.  Ligocki asserts that NHSP staff was aware of his prior conflict with Mr. Cote.  When Cote saw Ligocki for the first time in H-Building, Cote acted like he was ready to fight, but Ligocki diffused the situation by telling Cote that staff had put them together hoping they would fight.

At some point, Cote used resources in the prison library, specifically the Lexis Nexis website, to print a copy of a pro se habeas petition filed by John Russo ("Russo Petition").  Ligocki had testified against Mr. Russo in a criminal trial.  Cote put a copy of the petition on Ligocki's bed.  The petition alleged that Ligocki had psychiatric problems and had cooperated with the State to obtain favorable treatment.  Other inmates

---

[3]Ligocki does not name the individual H-Building staff members who were briefed, provide any information about what medical staff told H-Building staff, or indicate what questions the H-Building staff asked either the medical staff or Ligocki personally.

3

learned of the allegations in the petition or printed their own copies of it.  Since Cote obtained a copy of the petition, Ligocki has repeatedly requested that inmates no longer have access to Lexis Nexis or that they be prohibited from removing documents from the prison library that are not being used for legal purposes.  Ligocki's requests have been ignored, or he has been told there is nothing that can be done to prevent inmates from accessing public information from Lexis Nexis.  Cote extorted, or attempted to extort, money and/or sexual favors from Ligocki and threatened him with violence.

On May 13, 2016, Ligocki was moved to another cell on an upper tier in the same cell block.  Cote was upset because he thought, incorrectly, that Ligocki had asked to be moved to get away from him.  At 9:00 p.m. the same night, Ligocki went downstairs to the day room near cell #4.  Cote was present and made comments about the Russo Petition, asking, for example, what Russo would think about Ligocki's move to another cell, but Ligocki ignored Cote.  Cote became more agitated and began to "blurt" things out before moving back into his cell.  Ligocki stood in the doorway of the cell trying to calm Cote down.

When Ligocki turned his head to speak to another inmate, Cote stabbed Ligocki with a shank or knife, cutting his face and breaking his nose.  A fight ensued during which Cote stabbed Ligocki on the top of the head and in the leg.  Ligocki picked

4

up Cote, threw him to the ground, and kicked him.  Cote lost consciousness.

After the fight, Ligocki and Cote were taken to Concord Hospital, where Ligocki received 5-6 stitches in his face. Ligocki's face is scarred from Cote's attack, and surgery has been recommended to open the air passages in Ligocki's broken nose.

Both men were charged with disciplinary infractions, but Cote's charges were more serious.  Ligocki pled guilty to two infractions - mutual combat fighting and being out of place. Subsequently, Cote was indicted by a Merrimack County Grand Jury for felonious assault by a prisoner but was later found to be incompetent to stand trial.

Ligocki asserts that prior to the attack, he spoke and/or wrote to Lt. Larette, NHSP Librarian John Perkins, the unit counselor, H-Building Unit Capt. J. Masse, NHSP investigations, the NHSP mental health department, NHSP Director of Security and (former) Interim Warden Chris Kench, (former) NHSP Warden Michael Zenk, New Hampshire Department of Corrections ("NHDOC") (former) Commissioner William Wrenn, and Assistant Attorney General Ben Agate, who prosecuted John Russo, to complain that documents available through Lexis Nexis were being used to threaten and to extort money and sexual favors from Ligocki.[4]

---

[4]Ligocki does not name either Lt. Larette or Mr. Agate as defendants, provide the name of the unit counselor he spoke to,

5

Ligocki also accuses Masse of intercepting his inmate request slips and letters in order to hide what happens to inmates in H-Building.

In this action, Ligocki seeks declaratory and injunctive relief, compensatory and punitive damages, reimbursement of his costs in this action, and reimbursement for any future medical bills related to the May 13, 2016 incident.  Ligocki sues the defendants in their official and individual capacities.

## **Claims**

Plaintiff purports to bring the following claims for relief:

1. Supervisory NHSP defendants inadequately supervised and controlled their subordinates, in violation of Ligocki's Eighth Amendment rights.
2. The defendants were deliberately indifferent to Ligocki's safety, in violation of the Eighth Amendment, when they assigned him to H-building and placed him in a tier, unit, and cell with Chanel Cote, knowing Ligocki had had problems with Cote in the past.
3. The defendants were deliberately indifferent to Ligocki's safety, in violation of the Eighth Amendment, when they failed to stop inmates from obtaining copies of the Russo Petition after Cote obtained a copy of the petition from the prison library.
4. The defendants were deliberately indifferent to Ligocki's safety, in violation of the Eighth Amendment, when they failed to protect him from Cote after Cote obtained a copy of the petition.
5. The defendants were deliberately indifferent to Ligocki's safety, in violation of the Due Process Clause of the Fourteenth Amendment, when they

---

or identify who he spoke to in the NHSP investigations or mental health departments.

6

>     assigned him to H-building and placed him in a
>     unit and cell with Cote, knowing Ligocki had had
>     problems with Cote in the past.

See Compl. (Doc. No. 1), at 4, 17-18 ¶¶ 29-30.

## Discussion

### I.   Eleventh Amendment

Ligocki has named the NHSP as a defendant and has named all the NHSP defendants in their official capacities.  His claims for damages and injunctive relief against the prison, and his claims for damages against state officers in their official capacities, are barred by the Eleventh Amendment.  See Town of Barnstable v. O'Connor, 786 F.3d 130, 138 (1st Cir. 2015).  Accordingly, the district judge should dismiss the NHSP as a defendant in this action and dismiss all claims for damages against the remaining defendants in their official capacities.

### II.  Eighth Amendment Claims

#### A.   Elements

The Eighth Amendment guarantees the right of individuals to be free from "'cruel and unusual punishments'" while in custody. Whitley v. Albers, 475 U.S. 312, 318 (1986) (quoting U.S. Const. amend. VIII).  A properly stated Eighth Amendment claim must allege a subjective and objective element.  Hudson v. McMillian, 503 U.S. 1, 8 (1992).  First, it must appear from the complaint that the defendant official acted with a "sufficiently culpable

7

state of mind." Wilson v. Seiter, 501 U.S. 294, 298 (1991). Second, the conduct must have been objectively "harmful enough," or "sufficiently serious" to violate the Constitution. Id.

### B. Endangerment

Under the Eighth Amendment, "'prison officials have a duty to protect prisoners from violence at the hands of other prisoners.'" Lakin v. Barnhart, 758 F.3d 66, 70 (1st Cir. 2014) (quoting Farmer v. Brennan, 511 U.S. 825, 833 (1994)).

> [A] prison official violates an inmate's Eighth Amendment right against cruel and unusual punishment 'based on a failure to prevent harm' to the inmate only under two circumstances: 'the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm,' and the prison official must have acted, or failed to act, with 'deliberate indifference to inmate health or safety.'

Lakin, 758 F.3d at 70 (citation omitted). To act with deliberate indifference, a prison "official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

### C. Inadequate Supervision and Control of Subordinates

In Claim 1, Ligocki alleges there was inadequate supervision and control of subordinates in violation of the Eighth Amendment. "It is well-settled that only those individuals who participated in the conduct that deprived the plaintiff of his rights can be held liable" under § 1983.

8

Vélez-Rivera v. Agosto-Alicea, 437 F.3d 145, 146 (1st Cir. 2006) (quotation marks omitted).  Here, Ligocki has not identified the defendants who failed to adequately supervise and control their subordinates; the subordinates the offending defendants failed to supervise and control; or the specific actions the subordinates took, or did not take, as a result of the offending defendants failure to supervise or control them.  In short, plaintiff has failed to allege any facts to support this claim, and the district judge should dismiss Claim 1 for failure to state a claim upon which relief may be granted.

    D.    Supervisory Liability Claims

To the extent Ligocki asserts claims of supervisory liability under § 1983 against the administrative correctional defendants, namely former Commissioner Wrenn, former Interim Warden Kench, former Warden Michael Zenk, and NHSP Head of Investigations Marchant, whose first name is unknown, premised on the theory that those defendants are responsible for the operation of the NHSP and/or the security and safety of the inmates at the NHSP, see, e.g., Compl. (Doc. No. 1), at 7-9, he has failed to state a claim upon which relief may be granted.  "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior."  Iqbal, 556 U.S. at 676.  "Because vicarious liability is inapplicable to . . . § 1983 suits, a

plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Id.

"A supervisor may be held liable for the constitutional violations committed by his subordinates where 'an affirmative link between the behavior of a subordinate and the action or inaction of his supervisor exists such that the supervisor's conduct led inexorably to the constitutional violation.'" Morales v. Chadbourne, 793 F.3d 208, 221 (1st Cir. 2015) (citations omitted). To state a claim of supervisory liability, then, the plaintiff "must show 'an affirmative link, whether through direct participation or through conduct that amounts to condonation or tacit authorization,' between the actor and the underlying violation." Sanchez v. Pereira-Castillo, 590 F.3d 31, 49 (1st Cir. 2009) (citation omitted).

Here Ligocki does little more than allege that Wrenn, Kench, Zenk, and Marchant were "legally responsible" for the overall operation of the NHSP or were "legally responsible" for the safety and security of the inmates at the NHSP. See Compl. (Doc. No. 1), at 7-9. He does not allege that any of those individuals had a role in his housing assignment or a role in inmates obtaining copies of the Russo Petition from Lexis Nexis. As Ligocki cannot allege a constitutional claim against those defendants based solely on their supervisory authority, the

district judge should dismiss Ligocki's Eighth Amendment claims against Wrenn, Kench, Zenk, and Marchant.

    E.    <u>Defendants Lacasse, Perkins and Masse</u>

Plaintiff has alleged sufficient facts to survive initial review on the remainder of his Eighth Amendment claims (Claims 2-4). Therefore, in an Order issued simultaneously with this Report and Recommendation, the court has directed service of those claims against defendants Ms. Lacasse, Mr. Perkins, and Capt. Masse.

III. <u>Fourteenth Amendment Claims</u>

In Claim 5 of the complaint, Ligocki alleges the defendants violated his rights under the Fourteenth Amendment:

> with deliberate indifference to a serious risk to the plaintiffs (sic) safety, mentally and physically by placing the plaintiff in a building, unit, tier and cell knowingly or should have known previous conflicts between Chanel Cote and the plaintiff and provided documentation having a safety issue over false documents.

Compl. (Doc. No. 1), at 18 ¶30. It appears Ligocki is raising as an alternative ground for relief, independently of the Eighth Amendment, that his placement in Building H and in the same unit, tier, and cell as Cote deprived him of a protected liberty interest without due process of law, in violation of the Fourteenth Amendment.

11

The Due Process Clause of the Fourteenth Amendment provides no greater protection for prisoners, however, than the Eighth Amendment prohibition on cruel and unusual punishment and is therefore not an alternative basis for an inmate safety claim. See Whitley, 475 U.S. at 327 (holding that the Eighth Amendment "serves as the primary source of substantive protection to convicted prisoners" and, in a case involving inmate safety, that the Fourteenth Amendment affords the plaintiff "no greater protection" than the Eighth Amendment). Accordingly, the district judge should dismiss Ligocki's due process claims (Claim 5).

IV.  Preliminary Injunctive Relief

In the complaint, Ligocki seeks preliminary injunctive relief in the form of an Order directing the New Hampshire Department of Corrections ("NHDOC") to return him to New Hampshire, as he was incarcerated at a Rhode Island facility at the time he filed this action. In June 2019, Ligocki notified the court that he had been returned to the NHSP. See June 27, 2019 Let. (Doc. No. 13). The court entered an endorsed order finding the request for injunctive relief was likely moot but deferring a final decision until it had conducted a preliminary review of the complaint. See Nov. 25, 2019 Order.

NHDOC records show Ligocki remains incarcerated at the NHSP and that his maximum release date is May 14, 2024.[5]  Accordingly, Ligocki's request for preliminary injunctive relief in the form of an Order directing the NHDOC to return him to New Hampshire is moot, see Ford v. Bender, 768 F.3d 15, 29 (1st Cir. 2014) (In the absence of claims for damages, "[a] prisoner's challenge to prison conditions or policies is generally rendered moot by his transfer or release."), and the district court should dismiss it as such.

## Conclusion

For the foregoing reasons, the district judge should dismiss Ligocki's:  request for preliminary injunctive relief requiring the NHDOC to return him to New Hampshire; Fourteenth Amendment claims (Claim 5); Eighth Amendment claims against the NHSP, Commissioner Wrenn, Interim Warden Kench, Warden Zenk, and NHSP Head of Investigations Marchant; and Eighth Amendment claims for damages asserted against defendants Lacasse, Perkins, and Masse in their official capacities.  The district judge should also drop the NHSP, Commissioner Wrenn, Interim Warden Kench, Warden Zenk, and NHSP Head of Investigations Marchant as defendants in this action.

---

[5]See NHDOC Website, https://business.nh.gov/inmate_locator/ (Ligocki, David, last viewed April 6, 2020).

Case 1:18-cv-01112-SM   Document 16   Filed 04/08/20   Page 14 of 14

Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). The fourteen-day period may be extended upon motion. Failure to file specific written objections to the Report and Recommendation within the specified time waives the right to appeal the district court's order. See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

_____
Andrea K. Johnstone
United States Magistrate Judge

April 8, 2020

cc: David T. Ligocki, pro se