UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

David T. Ligocki,
    Plaintiff

    v.                                        Case No. 18-cv-1112-SM
                                              Opinion No. 2022 DNH 152

John E. Perkins
and John Masse,
    Defendants

**O R D E R**

At all times relevant to this proceeding, pro se plaintiff, David Ligocki, was an inmate in the custody of the State of New Hampshire Department of Corrections ("DOC") and housed at the New Hampshire State Prison ("NHSP") in Concord, New Hampshire. Most of Ligocki's claims have been dismissed. What remain are two claims in which Ligocki alleges that the defendants violated his Eighth Amendment right to be free from cruel and unusual punishment when, with deliberate indifference to his personal safety, defendants: (a) assigned Ligocki to a cell occupied by an inmate they knew was likely to harm him; and/or (b) failed to intervene to protect Ligocki from an obvious risk of harm.

Defendants move for summary judgment, asserting that there are no genuinely disputed material facts and saying that they

are entitled to judgment as a matter of law.  For the reasons, discussed, that motion is granted.  Ligocki's late-filed Motion to Continue Deadlines is denied.

I.   Ligocki's Motion to Continue.

Defendants filed their motion for summary judgment on June 6, 2022.  Two days <u>after</u> his objection was due, Ligocki filed a motion seeking an additional sixty days within which to file his objection.  That motion was granted. Consequently, Ligocki's objection was due on or before Tuesday, September 6, 2022.  Yet, for nearly <u>three months beyond that extended deadline</u>, Ligocki remained silent.  Then, just days ago (on December 1, 2022), Ligocki submitted another motion to extend the deadline by which he must file an objection.  In it, Ligocki simply asserts that he has been returned to prison on a parole violation and needs time to "pull the paperwork together and to finish, review, and respond to any filings."  Motion to Continue (document no. 78) at 1.  But the time to "finish, review, and respond to any filings" has long since passed.  And Ligocki offers no explanation for why he failed to meet the extended deadline for responding to defendants' pending motion or why, for three months <u>beyond</u> that deadline, he remained silent.

Ligocki has failed to show good cause why he was unable to respond to defendants' pending motion during the additional time afforded to him, nor has he explained why he did not seek further extension of the filing deadline in a timely manner. His Motion to Continue Deadlines is, therefore, necessarily denied.

II. <u>Defendants' Motion for Summary Judgment</u>.

   A.   Standard of Review.

When ruling on a motion for summary judgment, the court is "obliged to review the record in the light most favorable to the nonmoving party, and to draw all reasonable inferences in the nonmoving party's favor." <u>Block Island Fishing, Inc. v. Rogers</u>, 844 F.3d 358, 360 (1st Cir. 2016) (citation omitted). Summary judgment is appropriate when the record reveals "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In this context, a factual dispute "is 'genuine' if the evidence of record permits a rational factfinder to resolve it in favor of either party, and 'material' if its existence or nonexistence has the potential to change the outcome of the suit." <u>Rando v. Leonard</u>, 826 F.3d 553, 556 (1st Cir. 2016) (citation omitted). Where a genuine dispute of material facts exists, such a dispute must be resolved by a trier of fact, not by the court on summary

judgment. See, e.g., Kelley v. LaForce, 288 F.3d 1, 9 (1st Cir. 2002).

When objecting to a motion for summary judgment, "[a]s to issues on which the party opposing summary judgment would bear the burden of proof at trial, that party may not simply rely on the absence of evidence but, rather, must point to definite and competent evidence showing the existence of a genuine issue of material fact." Perez v. Lorraine Enters., 769 F.3d 23, 29-30 (1st Cir. 2014). Such evidence is missing in this case because Ligocki has failed to object or otherwise respond to defendants' pending motion for summary judgment, despite having been afforded substantial additional time to do so.

Accordingly, the court will take as admitted the factual statements recited in defendants' memorandum, as supported by the attached exhibits. See Local Rule 56.1(b) ("All properly supported material facts set forth in the moving party's factual statement may be deemed admitted unless properly opposed by the adverse party."). See also Puerto Rico American Ins. Co. v. Rivera-Vazquez, 603 F.3d 125, 131 (1st Cir. 2010) (discussing Puerto Rico's analog to Local Rule 56.1(b), also known as the "anti-ferret rule," and holding that, "This type of rule is aimed at enabling a district court to adjudicate a summary

judgment. See, e.g., Kelley v. LaForce, 288 F.3d 1, 9 (1st Cir. 2002).

When objecting to a motion for summary judgment, "[a]s to issues on which the party opposing summary judgment would bear the burden of proof at trial, that party may not simply rely on the absence of evidence but, rather, must point to definite and competent evidence showing the existence of a genuine issue of material fact." Perez v. Lorraine Enters., 769 F.3d 23, 29-30 (1st Cir. 2014). Such evidence is missing in this case because Ligocki has failed to object or otherwise respond to defendants' pending motion for summary judgment, despite having been afforded substantial additional time to do so.

Accordingly, the court will take as admitted the factual statements recited in defendants' memorandum, as supported by the attached exhibits. See Local Rule 56.1(b) ("All properly supported material facts set forth in the moving party's factual statement may be deemed admitted unless properly opposed by the adverse party."). See also Puerto Rico American Ins. Co. v. Rivera-Vazquez, 603 F.3d 125, 131 (1st Cir. 2010) (discussing Puerto Rico's analog to Local Rule 56.1(b), also known as the "anti-ferret rule," and holding that, "This type of rule is aimed at enabling a district court to adjudicate a summary

judgment.  See, e.g., Kelley v. LaForce, 288 F.3d 1, 9 (1st Cir. 2002).

When objecting to a motion for summary judgment, "[a]s to issues on which the party opposing summary judgment would bear the burden of proof at trial, that party may not simply rely on the absence of evidence but, rather, must point to definite and competent evidence showing the existence of a genuine issue of material fact."  Perez v. Lorraine Enters., 769 F.3d 23, 29-30 (1st Cir. 2014).  Such evidence is missing in this case because Ligocki has failed to object or otherwise respond to defendants' pending motion for summary judgment, despite having been afforded substantial additional time to do so.

Accordingly, the court will take as admitted the factual statements recited in defendants' memorandum, as supported by the attached exhibits.  See Local Rule 56.1(b) ("All properly supported material facts set forth in the moving party's factual statement may be deemed admitted unless properly opposed by the adverse party.").  See also Puerto Rico American Ins. Co. v. Rivera-Vazquez, 603 F.3d 125, 131 (1st Cir. 2010) (discussing Puerto Rico's analog to Local Rule 56.1(b), also known as the "anti-ferret rule," and holding that, "This type of rule is aimed at enabling a district court to adjudicate a summary

judgment motion without endless rummaging through a plethoric record. Given this root purpose, we have held with a regularity bordering on the monotonous that parties ignore the strictures of an 'anti-ferret' rule at their peril.").

B. Background.

During the relevant time period, defendant John Masse was an employee of the New Hampshire DOC and served as a Corrections Captain at the NHSP. During that same period of time, defendant John Perkins was employed by the DOC as the librarian of the prison's law library and circulation library.

Ligocki's claims arise out of an incident that occurred on May 13, 2016, when a fellow inmate – Chanel Cote – attacked and injured him. According to defendants, the relevant facts, as supported by the affidavits, answers to interrogatories, and other discovery materials appended to defendants' memorandum, are as follows:

> On May 13, 2016, Mr. Ligocki was moved out of a cell he had been sharing with fellow inmate Chanel Cote (and others) for about the past two months. Although Mr. Ligocki had asked to be moved out of that cell before, he was not requesting to be moved at that time.
>
> The new cell Mr. Ligocki moved to was on a different floor of the same housing unit, such that he now lived upstairs from Chanel Cote. Nevertheless, on the evening of the day he changed cells, Mr. Ligocki chose to venture back

5

downstairs and to approach Chanel Cote, who Mr. Ligocki perceived to be harboring some anger about his move. **EXHIBIT A** at pp. 1-2 [E.C.F. No. 1 at pp. 14-15 ¶¶ 24-25]; **EXHIBIT B** [Pl.'s Answer Interrog. No. 14]; **EXHIBIT D** [Pl.'s Answer Interrog. No. 15].

Instead of walking away from Chanel Cote, Mr. Ligocki decided to follow him over to the cell they had shared until earlier that day and to stand in the cell's doorway, where he proceeded to tell Chanel Cote to "calm down" and "just relax." **EXHIBIT A** at p. 2 [E.C.F. No. 1 at p. 15 ¶ 25]; **EXHIBIT D** [Pl.'s Answer Interrog. No. 15].

Despite still being wholly free to walk away at that point, Mr. Ligocki instead decided to keep standing in the doorway while he talked to another inmate. **EXHIBIT A** at p. 2 [E.C.F. No. 1 at p. 15 ¶ 25]. While he was doing so, Chanel Cote lunged towards Mr. Ligocki and stabbed him in the face multiple times with a sharp object. **EXHIBIT A** at p. 2 [E.C.F. No. 1 at p. 15 ¶ 25]; **EXHIBIT D** [Pl.'s Answer Interrog. No. 15]. Mr. Ligocki was subsequently charged with a disciplinary infraction for being out of place in Chanel Cote's cell and he pleaded guilty to that charge.[1]

Prior to these events, Mr. Ligocki never told Defendants that he had any concern about possibly being attacked by Chanel Cote. **EXHIBIT E** [Masse Declaration] ¶¶ 6-8, 14; **EXHIBIT F** [Perkins Declaration] ¶¶ 3-5; **EXHIBIT G** [Pl.'s Answer Interrog. No. 2] (saying nothing about having told Defendants that he was concerned about Chanel Cote attacking him in response to interrogatory asking Mr. Ligocki to describe what he told Defendants about his problems with Chanel Cote); **EXHIBIT H** [Pl.'s Answer Interrog. No. 8] (explaining that his "issues consisted of a problem over false paperwork written by John Russo," but saying nothing about having expressed concern about being attacked by Chanel Cote); **EXHIBIT I** [Pl.'s Answer Interrog. No. 1] (making no reference to Defendant Perkins in response to interrogatory that asked Mr. Ligocki to specifically describe his "previous incidents" with Chanel Cote and whether Defendant Perkins knew about any of those incidents); **EXHIBIT J** [Pl.'s Answer Interrog. No. 6] (similarly explaining that the "situation" he was concerned

---

[1] Parenthetically, the court notes that Cote was charged with more serious disciplinary infractions for his role in the altercation. Cote was also indicted and charged with assault.

6

about was a former inmate's court petition that portrayed Mr. Ligocki as an informant (hereinafter, the "Russo Petition") "being printed out and circulated around the prison," and saying nothing about Chanel Cote attacking him); **EXHIBIT K** [Pl.'s Answer Interrog. No. 7] (mentioning no concern about Chanel Cote attacking him in response to interrogatory asking for explanation of reasons why he initially refused housing unit assignment); **EXHIBIT L** [Pl.'s Answer Interrog. No. 9] (omitting mention of Defendants in response to interrogatory that asked Mr. Ligocki to identify who knew about a purported prior incident between Mr. Ligocki and Chanel Cote); **EXHIBIT M** [Pl.'s Answer Interrog. No. 10] (not describing a single specific threat directed towards him in response to interrogatory that asked Mr. Ligocki to specifically describe any such threat); **EXHIBIT N** [Pl.'s Answer Interrog. No. 11] (listing neither Defendant Masse nor Defendant Perkins as an individual whom he had informed about Chanel Cote having taken up a "fighting stance" towards Mr. Ligocki when the two became cellmates); see **EXHIBIT O** [Pl.'s Answer Interrog. No. 5] (simply refusing to answer interrogatory that asked Mr. Ligocki to specifically describe (a) what his complaint refers to in describing an "escalating pattern of harassment, threats, assaults, and other negative treatment," and (b) what, if anything, he communicated to Defendants about this so-called "escalating pattern").

And while Mr. Ligocki did express concern to Defendant Masse about the possibility of other residents learning about the Russo Petition, he said nothing to Defendant Masse that suggested he harbored any concern about a possibility that Chanel Cote might physically attack him. **EXHIBIT E** [Masse Declaration] ¶¶ 6-8 (declaring, inter alia, that "[i]n talking to me about the Russo Petition, Mr. Ligocki only indicated concern about how the content of the Russo Petition would negatively impact his reputation amongst the resident population," and that he accordingly "only understood Mr. Ligocki to be concerned about being socially ostracized by other residents in the event they learned about the Russo Petition, not about being physically harmed by other residents generally or by Chanel Cote particularly"); **EXHIBIT G** [Pl.'s Answer Interrog. No. 2] (stating that the concern he expressed was about Chanel Cote making other residents aware of the Russo Petition, not about Chanel Cote physically attacking him); **EXHIBIT H**

7

> [Pl.'s Answer Interrog. No. 8] (similar); **EXHIBIT J** [Pl.'s Answer Interrog. No. 6] (similar).
>
> Defendants accordingly did not believe there was any foreseeable risk of Mr. Ligocki being physically attacked by Chanel Cote on or prior to May 13, 2016. **EXHIBIT E** [Masse Declaration] ¶ 14; **EXHIBIT F** [Perkins Declaration] ¶ 5.

Defendants' Memorandum (document no. 71-1) at 1-4 (cleaned up).

The so-called "Russo Petition" was a pro se habeas corpus petition filed by inmate John Russo. Apparently, Ligocki testified against Russo during Russo's underlying criminal trial and that fact was revealed in Russo's habeas petition. The petition also alleged that Ligocki had psychiatric problems and had testified against Russo in order to obtain favorable treatment from the State. At some point, inmate Chanel Cote appears to have used the prison library's online resources to obtain a copy of the Russo Petition and shared it with other inmates. Ligocki was concerned about how information in the Russo Petition would be received by fellow inmates, how it would affect his reputation, and whether it might expose him to potential harm.

With respect to Ligocki's specific concerns about inmate Chanel Cote, any alleged prior incidents between Ligocki and Cote, and the Russo Petition, defendant Masse testified that:

8

> On and prior to May 13, 2016, I had no knowledge of any prior physical incident having occurred between Mr. Ligocki and Chanel Cote.
>
> On and prior to May 13, 2016, I was not aware of any information that would have caused me to believe that Mr. Ligocki's physical safety was at risk due to the ability of other residents to potentially access the Russo Petition.  I also was not aware of any information that would have caused me to believe that Chanel Cote posed any foreseeable risk to Mr. Ligocki's safety.  I accordingly did not believe that any such risks existed on or prior to that date.

Affidavit of John L. Masse (document no. 71-6) at paras. 13-14.

Defendant Perkins testified that, as the prison's librarian, his contact with Ligocki was quite limited:

> In my time as Media Generalist, I only had one conversation with David Ligocki.  During that conversation, Mr. Ligocki did not express any concern to me about the availability of any documents on Lexis Nexis or about a petition filed by John Russo.
>
> I also never received anything in writing from Mr. Ligocki regarding the availability of any documents on Lexis Nexis or about a petition filed by John Russo.
>
> On and prior to May 13, 2016, I was not otherwise aware of any information that would have caused me to believe that Mr. Ligocki's safety was in any way at risk due to documents on Lexis Nexis or a petition filed by John Russo.  I likewise was not aware of information that would have caused me to believe that Chanel Cote posed any foreseeable risk to Mr. Ligocki's safety.  I accordingly did not believe that any such risks existed on or prior to that date.

Affidavit of John E. Perkins (document no. 71-7) at paras. 3-5.

9

C. Discussion.

As construed by the magistrate judge, the two remaining claims advanced in Ligocki's complaint are:

1. [Defendant Masse was] deliberately indifferent to Ligocki's safety, in violation of the Eighth Amendment, when he assigned him to H-building and placed him in a tier, unit, and cell with Chanel Cote, knowing Ligocki had had problems with Cote in the past; and

2. [Defendants Masse and Perkins] were deliberately indifferent to Ligocki's safety, in violation of the Eighth Amendment, when they failed to protect him from Cote after Cote obtained a copy of the [Russo] petition.

Report and Recommendation (document no. 16) at 6. Plainly, then, the focus of Ligocki's claims is on the risk posed to him by fellow inmate Chanel Cote.

As the Supreme Court has observed, the "Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (cleaned up). To be sure, the Constitution imposes on prison officials the obligation to "protect prisoners from violence at the hands of other prisoners." Id. at 833. "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison

10

officials responsible for the victim's safety." Id. at 834. Rather, liability attaches only when two conditions – one objective, and one subjective - are met:

> First, the deprivation alleged must be, objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities. For a claim (like the one here) based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm.
>
> The second requirement follows from the principle that only the unnecessary and wanton infliction of pain implicates the Eighth Amendment. To violate the Cruel and Unusual Punishments Clause, a prison official must have a sufficiently culpable state of mind. In prison-conditions cases that state of mind is one of "deliberate indifference" to inmate health or safety.

Id. (cleaned up). A prison official acts with deliberate indifference to an inmate's health or safety if he or she "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Id. at 847. Consequently, under the second element of the Farmer two-part test, Ligocki must demonstrate that the defendants were more than merely negligent when they assigned him to share a cell with Cote (or when they acquiesced in that assignment). Rather, he must show that they intentionally placed him in harm's way or that they were deliberately indifferent to a known serious risk that he would be harmed.

11

See, e.g., Estelle v. Gamble, 429 U.S. 97, 106 (1976) (noting, in the medical context, that negligence or malpractice in the treatment of an inmate is insufficient to state a viable Eighth Amendment claim; instead, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.").

So, to avoid summary judgment on his failure-to-protect claims, Ligocki must point to facts from which the defendants might reasonably have inferred that Cote posed a substantial threat to Ligocki's safety, thereby warranting some preventative measures on the part of prison authorities. Then, he must also demonstrate that defendants consciously disregarded that known risk or that they were deliberately indifferent to it. Ligocki has failed to carry that two-part burden. That he had requested a transfer to a different cellblock earlier in the year is not, standing alone, sufficient; such a request does not compel the conclusion that Ligocki should have been transferred, nor does it necessarily suggest that defendants recognized, but were indifferent to, a potential threat posed to him by Cote (or any other inmate). This is particularly true in this case, since the admissible evidence of record all points to the conclusion that neither defendant knew that Cote posed a serious risk to Ligocki, whether because of past animosity between the men, or

12

because of claims made about Ligocki in the Russo Petition, or for any other reason. Indeed, there is insufficient evidence in the record to conclude that either defendant knew or should have known that Ligocki faced a <u>substantial risk of serious harm</u> from <u>any</u> fellow inmate as a result of the dissemination of the Russo Petition.[2]

## Conclusion

Based upon the record before the court, there is insufficient evidence from which a properly instructed jury could plausibly conclude that either defendant knew that Cote posed a substantial risk of serious harm to Ligocki <u>and</u>, despite such knowledge, disregarded the risk by failing to take reasonable measures to abate it. Defendants are, then, entitled to judgment as a matter of law with respect to Ligocki's two remaining cruel and unusual punishment claims.

---

[2] The only inmate requests slips submitted by Ligocki to prison officials that are part of the record are those attached to Ligocki's complaint. However, only one of them pre-dates May 13, 2016 – the date on which Cote assaulted Ligocki. <u>See</u> Document no. 1-1, at page 1 of 31. In it, Ligocki questions why he was not returned to his old cell after he was transferred back to NHSP following a brief stay at the prison facility in Berlin. That request slip makes no mention of inmate Cote or any security concerns. Consequently, the court has no evidence of what, if anything, Ligocki might have told prison authorities about alleged prior incidents with Cote, Cote's use of the Russo Petition, or, more generally, if Ligocki ever specifically complained to <u>any</u> DOC employee about sharing a cell with Cote due to security concerns.

For the foregoing reasons, defendants' Motion for Summary Judgment (**document no. 71**) is granted. Plaintiff's Motion to Continue Deadlines (**document no. 78**) is denied. The Clerk of Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

December 5, 2022

cc: David T. Ligocki, pro se
    Counsel of Record